IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| MARCY GRANTOR, an individual, individually and as Guardian ad Litem for M.G., a minor, | ) ) ) ) | No. 67916-3-I<br><br>(Consolidated with No. 67917-1-I) |
| Appellants/Cross Respondents, | ) ) | |
| v. | ) ) | |
| BIG LOTS STORES, INC., an Ohio corporation, and PNS STORES INC., a California corporation, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents/Cross Appellants. | ) | FILED:  September 16, 2013 |

SCHINDLER, J. — Marcy Grantor, individually and as the guardian ad litem for

M.G. (Grantor), obtained a default judgment of $250,000 against Big Lots Stores Inc.

(BLSI).  Grantor appeals the order to vacate the default judgment.  BLSI cross appeals

the award of attorney fees and amendment of the caption.  We affirm.

FACTS

On February 28, 2008, Marcy Grantor and her two-year-old child M.G. went to

the Big Lots store in Burien.  Grantor stopped in one of the aisles to look at some items.

An employee was stacking heavy boxes across the aisle from Grantor and M.G.  The

stack of boxes fell over.  The boxes hit M.G., pushing her head-first into a metal shelf.

Grantor said that when she "picked [M.G.] up from beneath the boxes," she saw a large gash on M.G.'s forehead and "[t]he wound started to bleed heavily."

Grantor said that right after the accident happened, "the Big Lots assistant manager named Tracy came rushing up to me, saying 'I'm so sorry,'" and that she had knocked the boxes over with her foot." Tracy gave Grantor a business card "identifying herself and giving a phone number and contact person named Rebecca at 'Big Lots, Inc.' for [Grantor] to call to report the injury." One side of the business card is signed by Tracy and contains the name and address of "BIG LOTS STORE NO. 4436" at "125 B 148TH STREET[,] BURIEN, WA 98148," with the handwritten name of "Rebecca" and her telephone number. The other side of the card states:

> WE WILL PROMPTLY NOTIFY OUR HOME OFFICE OF THE INCIDENT IN WHICH YOU WERE INVOLVED. THIS CARD IS NOT A GUARANTEE FOR PAYMENT BUT FOR INQUIRY PURPOSES ONLY.
>
> PLEASE DIRECT CLAIMS OR INQUIRIES ABOUT THIS MATTER TO:
>
> **BIG LOTS INC.**
> **RISK MANAGEMENT DEPARTMENT**
> **300 PHILLIPI ROAD**
> **COLUMBUS, OHIO 43228-5311**
> **TOLL FREE 1-888-244-5687**
>
> DATE OF INCIDENT 2/29/08        LOCATION NUMBER #4436

Big Lots Inc. (BLI) is a holding company and the parent company of Big Lots Stores Inc. (BLSI). BLI is an Ohio corporation. BLI does not operate any retail stores or do business in Washington. BLSI is a "retail operating company" that owns retail stores in multiple states, including Washington, and is registered with the Secretary of State in Washington. BLI is also the parent company of PNS Stores Inc. PNS Stores also operates Big Lots retail stores.

M.G.'s wound required seven stitches, resulting in $3,228.03 in medical expenses. Dr. Devorah Steinecker diagnosed M.G. with a mild head injury. Dr. Steinecker stated that the accident resulted in "cervical, upper thoracic, sternal, occipital and intracranial dural strains along with a low back strain."

A year later, Grantor's attorney sent a letter to BLI at the Columbus, Ohio address listed on the business card. In response to the letter, BLSI Risk Management Department employee Michelle May called Grantor's attorney to obtain "documents relating to [Grantor's] claims."

Grantor's attorney and May exchanged a number of e-mails discussing settlement of the claim. The e-mails from May clearly identify her as a claims examiner for the Risk Management Department of "Big Lots Stores, Inc." Grantor's attorney sent May photographs and documentation of medical expenses.

After Grantor's attorney and May were unable to reach a settlement, the attorney asked May, "Who is Big Lots' agent for service of process in Washington?" May told the attorney that "[t]he agent is CSC, the United States Corporation Company." Corporation Service Company (CSC) is the registered agent in Washington for BLSI. CSC is not the registered agent for BLI.

On February 26, 2010, Grantor, individually and as the guardian ad litem for M.G. (Grantor), filed a personal injury complaint for damages against "Big Lots, Inc., an Ohio corporation," King County Superior Court Case Number 10-2-08519-0 SEA. The complaint alleged that BLI is an Ohio corporation doing business in Washington, and that venue in King County is proper "because Big Lots committed a tort giving rise to

plaintiff's claims in King County." The complaint alleged M.G. was injured at "Big Lots store No. 4436" in Burien.

On March 1, Grantor served CSC with a copy of the summons and the complaint. The next day, CSC sent a "Rejection of Service of Process" by regular mail to Grantor's attorney. The letter states, in pertinent part:

> **Rejection of Service of Process**
> Return to Sender Information . . . .
>
> **Date:**    03/02/2010
>
> **Party Served:**    Big Lots, Inc.
> **Title of Action:**    Marcy Grantor vs. Big Lots, Inc.
> **Court:**    King County Superior Court, Washington
> **Case Number:**    10-2-08519-0 SEA
>
> The service of process received for the Party Served, as listed above, cannot be forwarded to the intended party for the reason(s) listed below.
>
> Because two different companies can have very similar names, the name of the company to whom service is directed MUST BE IDENTICAL to the company name on file with the Secretary of State, or other appropriate state agency.

Grantor's attorney said that he never received the letter. But the Rejection of Service of Process letter was never "returned to [CSC] by the United States Postal Service as undeliverable."

On January 26, 2011, Grantor filed "Plaintiffs' Ex Parte Motion for Order of Default Order Against Defendant Big Lots Stores, Inc." In the motion, the attorney asserts that "service was properly effected upon Big Lots Stores, Inc. via personal service on its registered agent, CSC." The attorney also asserts that "CSC was identified as the registered agent for Big Lots Stores, Inc. by both Big Lots itself and the Washington Secretary of State registration documents for Big Lots Stores, Inc."

However, the attorney concedes that "[i]n preparing this motion, counsel for plaintiffs realized that the caption contains a clerical error in the name of defendant. The complaint identifies defendant as 'Big Lots, Inc.' rather than 'Big Lots Stores, Inc.'"

The court entered an "Ex Parte Order of Default Against Big Lots, Inc." The Ex Parte Order of Default Against Big Lots, Inc. states the complaint contains a "misnomer in the caption, identifying defendant as 'Big Lots, Inc.' rather than Big Lots Stores, Inc.," but the attorney filed an affidavit of "Personal Service On: BIG LOTS STORES, INC." stating that on March 1, 2010, the attorney served the complaint on CSC as the registered agent for BLSI, and BLSI did not "appear, answer or otherwise defend this action."

On February 25, Grantor filed an ex parte motion for entry of a default judgment against BLSI for general and special damages of $220,000 for M.G. and $30,000 for Grantor. In support, Grantor submitted evidence for the medical expenses of $3,228.03, a declaration from Dr. Phil Haeck stating that a future surgery would cost $7,000, and a declaration from Grantor.

On February 28, the court entered a judgment of $220,000 for M.G. against BLSI and a judgment of $30,000 for Grantor against BLSI. The case caption for each of the judgments names "Big Lots, Inc." as the defendant but "Big Lots Stores, Inc." is designated in the judgments as the "Judgment Debtor."

The next day on March 1, Grantor filed a personal injury action against "Big Lots Stores, Inc., an Ohio corporation," King County Case Number 11-2-08393-4 SEA, "out of an abundance of caution." The complaint states that Grantor filed "an identical action in this Court on February 26, 2010" but did not identify BLSI. The complaint alleges,

"Plaintiffs properly effected service on . . . both [BLI] and [BLSI]" and a default judgment was entered on February 28, 2011. The complaint states, in pertinent part:

> 1.      Plaintiffs filed an identical action in this Court on February 26, 2010. King County Superior Court Case No. 10-2-08519-0. The caption of the complaint in that matter identified the defendant as "Big Lots, Inc.," but did not identify "Big Lots Stores, Inc." Plaintiffs properly effected service on Big Lots Stores, Inc., which was effective against both Big Lots, Inc. and Big Lots Stores, Inc. Neither Big Lots, Inc. nor Big Lots Stores, Inc. answered or otherwise appeared in that action.
> 2.      The court in King County Superior Court Case No. 10-2-08519-0 entered an order of default on January 27, 2011, and entered default judgment on February 28, 2011. Plaintiffs believe that judgment is effective against either or both Big Lots, Inc. or Big Lots Stores, Inc.
> 3.      Plaintiffs are filing this identical action out of an abundance of caution, in the event that service or the judgment in the prior action is held to be void or ineffective against either "Big Lots, Inc." or "Big Lots Stores, Inc." Plaintiffs intend to move this Court to stay the above-captioned matter pending resolution, or Big Lots' waiver or termination, of any challenge to or appeal of the judgment of King County Superior Court Case No. 10-2-08519-0 as against "Big Lots, Inc." or "Big Lots Stores, Inc."

On May 31, Grantor served CSC with the default judgment entered against BLSI on February 28 and the complaint filed against BLSI on March 1 at "Big Lots Stores, Inc. c/o Corporation Service Company[,] 300 Deschutes Way, S. W., Suite 304[,] Tumwater, Washington 98501." The May 31 letter states:

> On February 28, 2011, the King County Superior Court in Seattle, Washington entered default judgment against Big Lots in favor of [M.G.] and Marcy Grantor in Case No. 10-2-08519-0. Concurrently with this letter, the judgment has been served on Big Lots through its registered agent, Corporation Services Company.
> In addition, out of an abundance of caution, plaintiffs [M.G.] and Marcy Grantor have caused a second complaint to be filed against Big Lots, which also has been served today. That second complaint states identical claims to those upon which [M.G.] and Marcy Grantor already have obtained judgment, and has been brought solely to preserve the Grantors' rights in the event that Big Lots attempts to overturn the judgment in the prior action.

Please have an attorney or other representative of Big Lots contact me at his or her earliest convenience to confirm how and when Big Lots will satisfy the judgment.

On June 1, BLI filed a notice of appearance in the first action, King County Case No. 10-2-08519-0 SEA, and contacted Grantor's attorney to inform him that BLI does not do business in Washington. The attorney also told Grantor's attorney that BLSI is not the correct defendant, "the correct defendant is PNS Stores, Inc." and "PNS Stores, Inc. did not receive notice of your client's lawsuit."[1]

In a June 10 letter to Grantor's attorney, the BLI attorney reiterated that BLI did not do business in Washington and enclosed a copy of the Rejection of Service of Process letter. The BLI attorney offered to "forward a stipulated motion to vacate" and substitute PNS Stores for BLSI. The letter states, in pertinent part:

> [T]he Complaint is denominated against "Big Lots, Inc., an Ohio corporation." In fact, as I advised you, Big Lots, Inc. is in fact an Ohio corporation that has no presence in Washington State and does not do business in Washington State. Apparently, the rejection of service was forwarded to you in response to your attempt to serve an out-of-state corporation by serving CSC which has no authority to accept service for Big Lots, Inc.
>  . . . .
> Your pleadings indicate that the allegations in your Complaint "unambiguously indicate that the defendant is Big Lots Stores, Inc." In fact, I could find no reference to Big Lots Stores, Inc in the Complaint based on my first review. . . .
> You indicated in your declaration in support of default that you discovered your mistake before requesting *ex parte* relief. I would have expected you to then amend your Complaint, name the correct defendant, and see that the correct defendant was properly served.
>  . . . Further, as I advised you by telephone, Big Lots Stores, Inc. is not even the correct defendant; rather, the correct defendant is PNS Stores, Inc. PNS Stores, Inc. did not receive notice of your client's lawsuit.
> Finally, the Rejection of Service of Process should have been clear notice to your client that Big Lots, Inc. was not the proper defendant. If in

---

[1] PNS Stores is a California corporation.

7

fact, as all of the pleadings submitted to the court suggest, and your pleadings argue, it was really your client's intention to sue Big Lots Stores, Inc., you should have done so by amending and re-serving your original Complaint.

On July 14, BLSI filed a motion to vacate the ex parte order of default and entry of the default judgments. BLSI argued that because it was not served and did not receive notice of the lawsuit or entry of judgments until May 31, 2011, the order of default and default judgments were void and should be vacated. As the attorney for BLI previously told Grantor's attorney, BLSI stated that "[t]he entity operating the retail store where the alleged injuries occurred is PNS Stores, Inc., ('PNS') a California Corporation, separate and distinct from BLSI." BLSI pointed out that it was never named or identified by Grantor as a defendant in the complaint, and the caption in the ex parte motion for default and the default judgments named BLI, not BLSI. BLSI also argued there were questions of fact about actual or constructive notice of an unsafe condition.

In support of the motion to vacate the ex parte order of default and default judgments, BLSI submitted the declaration of CSC employee Andrew Gachaiya. Gachaiya states, in pertinent part:

> As a registered agent for the receipt of service of process, CSC is only authorized to receive service of process on behalf of entities that have named it as their registered agent. According to our records, CSC is not now, nor was it anytime during the pendency of this case, the registered agent for Big Lots, Inc. in the State of Washington.

Gachaiya testified that "[o]n March 2, 2010, CSC sent a Rejection of Service of Process letter via United States Postal Service regular mail" to Grantor's attorney and had no record of the letter "having been returned to it by the Unites States Postal Service as undeliverable."

8

BLSI attorney Tamara Nelson testified that because the summons and complaint served on CSC "were not directed to Big Lots Stores, Inc., Big Lots Stores, Inc. never received notice of the lawsuit." BLSI did not have notice of the lawsuit or entry of the order of default and default judgments until May 31, 2011.

Grantor argued that the misnomer in the caption did not mean service of process was defective because the registered agent for BLSI was served and the complaint identified BLSI. Grantor's attorney also states that he never received a rejection of service from CSC, and BLSI could not show excusable neglect.

The court held a hearing on the motion to vacate on July 22. At the beginning of the hearing, the BLSI attorney agreed to substitute PNS Stores as the named defendant in the lawsuit. At the conclusion of hearing, the court ruled that it was "clear there has been some miscommunication" caused by giving Grantor the business card and that Grantor also "made mistakes." Because there was "no information to show that Big Lots, Inc. the parent, Big Lots Stores, much less PNS had actual notice that a lawsuit had been filed," the court continued the hearing to allow the parties to engage in discovery.

Grantor took the depositions of Marc Amos, the attorney representing BLSI and PNS Stores, and CSC employee Gachaiya.

Amos testified that BLI is a holding company which does not do business in Washington and is not registered with the Washington Secretary of State.[2] Amos stated that BLSI operates retail stores in multiple states, including Washington, but that the

---

[2] Amos testified, in pertinent part:

[BLI] is a holding company only. It does not operate any retail stores or businesses. It does not employ any employees; rather it maintains only a Board of Directors which function only in the State of Ohio. Big Lots, Inc. does not do business within the State of Washington.

Burien Big Lots store is operated by PNS Stores. Amos testified that "PNS, a non party to this action, at all times relevant to this matter, **was** the entity that leased, maintained, operated and controlled the retail store in Burien, Washington referenced in Plaintiff's complaint."[3]

Amos testified about the instructions given to CSC:

> [T]he instructions to CSC regarding service on Big Lots Stores, Inc., and PNS Stores, Inc., in effect in 2010 were to accept service on behalf of Big Lots Stores, Inc., to accept service on behalf of PNS Stores, Inc., and to reject service on parties that are not properly named.

Amos also confirmed that BLSI did not receive notice of the lawsuit Grantor filed against BLI.

At the conclusion of the second hearing, the court granted the motion to vacate the ex parte order of default and the default judgments, and ordered the case set for trial. The court also ordered BLSI to pay $10,000 "for attorney fees incurred in relation to the default judgment," and revised the caption to name BLSI and PNS as defendants.

The court entered findings of fact and conclusions of law. The court found both parties had made mistakes and that BLSI, not BLI, had responded to Grantor's initial communications about her claims. The court also found that BLSI "did not learn about the commencement of this action from its registered agent and did not appear." The findings state, in pertinent part:

> 1. Mistakes were made by all parties from the commencement of the claim through the entry of the order of default and default judgment.
> . . . .
> 3. When plaintiffs contacted Big Lots, Inc., Big Lots Stores, Inc. responded and thereafter communicated with plaintiffs about their claims.
> 4. On March 1, 2010, plaintiffs personally served the registered agent in Washington for Big Lots Stores, Inc. and PNS Stores, Inc. with

---

[3] (Emphasis in original.)

the summons and complaint in this action, the caption of which identified only Big Lots, Inc. as the defendant.

. . . .

6.      Because of Big Lots Stores, Inc.'s instruction [to CSC], it did not learn about the commencement of this action from its registered agent and did not appear. . . .

. . . .

8.      Big Lots Stores, Inc. was diligent in moving to vacate the orders of default and default judgment promptly after learning about the entry of default judgment.

The court concluded that Grantor's service upon the registered agent for BLSI was effective "notwithstanding the misnomer in the caption," but that "[n]either Big Lots, Inc. nor Big Lots Stores, Inc. had actual notice of the commencement of this suit" because CSC was not the registered agent for BLI, and BLSI had instructed its registered agent to only notify it of service if the lawsuit named BLSI as a party. The court also concluded BLI and BSLI established excusable neglect under CR 60(b).

ANALYSIS

Grantor contends the court erred in granting the motion to vacate the order of default and the default judgments against BLSI for $250,000.

We review a trial court's decision vacating a default judgment for an abuse of discretion. Little v. King, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." Little, 160 Wn.2d at 710 (citing Cox v. Spangler, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000)). "Abuse of discretion is less likely to be found if the default judgment is set aside." Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). We review a trial court's factual findings for substantial evidence. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded

11

person the premise is true. Sunnyside, 149 Wn.2d at 879. Unchallenged findings are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

Default judgments are disfavored in Washington. Griggs, 92 Wn.2d at 581. Courts prefer to determine cases on their merit rather than by default. Griggs, 92 Wn.2d at 581. "A proceeding to vacate a default judgment is equitable in character and relief is to be afforded in accordance with equitable principles." Griggs, 92 Wn.2d at 581. In reviewing a motion to vacate a default judgment, the court's principle inquiry should be whether the default judgment is just and equitable. Little, 160 Wn.2d at 710-11. "This is not a mechanical test; whether or not a default judgment should be set aside is a matter of equity." Little, 160 Wn.2d at 704. The trial court may exercise its discretion "liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done." White v. Holm, 73 Wn.2d 348, 351, 438 P.2d 581 (1968).

We engage in a fact-specific inquiry to determine whether or not justice is being done. Griggs, 92 Wn.2d at 582. Because we do not favor default judgments, we are less likely to find that the trial court based its decision on untenable grounds when the court vacated the default judgment than when it did not. Griggs, 92 Wn.2d at 582.

A motion to vacate a default judgment is governed by CR 55 and CR 60. Morin v. Burris, 160 Wn.2d 745, 754, 161 P.3d 956 (2007). CR 55(c)(1) provides that a court may set aside an order of default for good cause and upon terms the court deems just. If a default judgment has been entered, the court may set it aside under CR 60(b). CR 60(b) sets out the specific grounds that warrant setting aside a default judgment,

including "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." CR 60(b)(1). The moving party bears the burden of proof. Little, 160 Wn.2d at 704-05.

To vacate a default judgment, a moving party must demonstrate that (1) there is substantial evidence to support a prima facie defense; (2) the failure to timely appear and answer was occasioned by mistake, inadvertence, surprise, or excusable neglect; (3) the moving party acted with due diligence after notice of entry of the default judgment; and (4) the opposing party will not suffer a substantial hardship if the trial court vacates the default judgment. White, 73 Wn.2d at 352. The first two factors above are "primary," and the latter two are "secondary." Little, 160 Wn.2d at 704. We view the evidence in the light most favorable to the moving party when deciding whether there is substantial evidence of a prima facie defense. Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 835, 14 P.3d 837 (2000).

Grantor argues that the court's finding that notwithstanding the misnomers in the caption, service on CSC as the registered agent for BLSI was effective, contradicts the conclusion that BLSI did not have notice of the lawsuit. Grantor contends the trial court erred in concluding that neither BLI nor BLSI had "actual notice" of the lawsuit, citing the statute that states the corporation's registered agent is the corporation's agent for service of process. RCW 23B.05.040(1). But the record clearly establishes that BLI and BLSI did not have actual notice of the lawsuit. Grantor ignores the unchallenged finding that BLSI expressly instructed the registered agent CSC to not accept service or notify BLSI of a lawsuit that did not name BLSI as a party.

Grantor also relies heavily on Entranco Engineers v. Envirodyne, Inc., 34 Wn. App. 503, 662 P.2d 73 (1983), to argue service was effective. In Entranco, the summons and complaint named a parent corporation but served the subsidiary at its headquarters. Entranco, 34 Wn. App. at 504. The complaint described only the activities of the subsidiary and not those of the parent corporation. Entranco, 34 Wn. App. at 504. The plaintiff obtained a default judgment against the parent corporation. Entranco, 34 Wn. App. at 505. The trial court granted the parent company's motion to vacate the default judgment for lack of personal jurisdiction, and denied the motion to amend to substitute the subsidiary for the parent corporation. Entranco, 34 Wn. App. at 505.

On appeal, we affirmed the decision to vacate the default judgment against the parent company for lack of jurisdiction. Entranco, 34 Wn. App. at 506. But we concluded the court erred in denying the motion to amend the default judgment to name the subsidiary because the allegations in the complaint were specific enough to give the subsidiary notice that the parent company "could not reasonably have been understood to be the intended defendant because [the parent company] never transacted business in Washington." Entranco, 34 Wn. App. at 506.

Here, the undisputed findings establish that neither BLI nor BLSI received notice of the lawsuit. And unlike in Entranco, the allegations in the complaint make no reference to BLSI or PNS. While the complaint identifies the Burien store, the only entity named in the complaint is BLI. There is no dispute that BLI does not do business in Washington and CSC was not the registered agent for BLI.

Grantor also contends BLSI did not present evidence of a defense or excusable neglect. In determining whether the defendant presented substantial evidence of a prima facie defense, the court "view[s] the facts proffered in the light most favorable to the defendant, assuming the truth of that evidence favorable to the defendant and disregarding inconsistent or unfavorable evidence." TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 203, 165 P.3d 1271 (2007).

Where the moving party demonstrates a strong or "virtually conclusive" defense, the court spends "scant time" looking into the reasons for default, as long as the moving party timely applies to vacate and did not willfully fail to appear. White, 73 Wn.2d at 352. If the moving party can only "demonstrate a defense that would, prima facie at least, carry a decisive issue to the finder of the facts in a trial on the merits," the court scrutinizes the remaining three factors with greater care. White, 73 Wn.2d at 352-53.

Substantial evidence does not support the finding that BLSI presented no evidence of a prima facie defense. But the error had no effect on the court's ultimate conclusion that vacating the default judgment was warranted. Ritter v. Bd. of Registration for Prof'l Eng'rs & Land Surveyors, 161 Wn. App. 758, 762 n.1, 255 P.3d 799 (2011) ("An erroneous finding of fact that does not materially affect conclusions of law is not prejudicial.")

Viewed in the light most favorable to BLSI, the record establishes BLSI had a strong defense. A landowner owes a duty of care in a premises liability case. Iwai v. State, 129 Wn.2d 84, 90-91, 915 P.2d 1089 (1996). BLSI presented evidence that it was not liable to Grantor.

The undisputed evidence established that BLSI did not own or operate the Burien Big Lots store. BLSI attorney Amos testified that "PNS – not BLSI – conducted business and sold goods and services at the Burien, Washington store" and that "BLSI has not conducted business, or sold goods or services at the Burien, Washington location."[4] Viewing the evidence in the light most favorable to BLSI, the record shows evidence of a strong defense.[5]

Grantor claims the court erred by concluding that "Big Lots, Inc.'s and/or Big Lots Stores, Inc.'s failure to appear was excusable neglect." The court concluded that "Big Lots, Inc.'s and/or Big Lots Stores, Inc.'s failure to appear was excusable neglect under CR 60(b) because of the misnomer in the caption and because of Big Lots Stores, Inc.'s instruction to its registered agent." Grantor contends the "misnomer" in the caption and the instructions to the registered agent do not establish excusable neglect. Grantor asserts the failure of BLSI to appear was willful. The cases Grantor relies on, Little and TMT, do not support her argument and are distinguishable.

In Little, the superior court directed the defendant to file an answer, ruling that failure to file an answer would result in entry of an order of default judgment. Little, 160 Wn.2d 706. On appeal, the court held that the defendant "made the deliberate choice . . . not to prevent default judgment by filing an answer. The decision not to

---

[4] BLSI also argued that the boxes posed an open and obvious risk. " 'A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.' " Ford v. Red Lion Inns, 67 Wn. App. 766, 770-71, 840 P.2d 198 (1992) (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965)). The defense attorney presented photocopied photographs of the location of the boxes and argued the photographs would show that the high stack of large boxes presented an obvious danger.

[5] Grantor also relies heavily on the court's statements at the September 16 hearing that BLSI presented no evidence of a defense. Because the court did not incorporate its oral ruling into the findings or conclusions, the court's oral ruling " 'has no final or binding effect.' " Grieco v. Wilson, 144 Wn. App. 865, 872, 184 P.3d 668 (2008) (quoting Ferree v. Doric Co., 62 Wn.2d 561, 567, 383 P.2d 900 (1963)).

participate does not meet the standard required" for excusable neglect. Little, 160 Wn.2d 706.

In TMT, the trial court denied the defendant's motion to vacate the default judgment because the defendant did not establish either a strong defense or excusable neglect. TMT, 140 Wn. App. at 199. The defendant PETCO failed to appear or respond to either the initial summons and complaint or the amended complaint. TMT, 140 Wn. App. at 197. According to PETCO, it received the summons and complaint, but its legal assistant did not enter that information into the tracking system and did not notify the general counsel of the lawsuit before leaving for vacation. TMT, 140 Wn. App. at 198. However, a PETCO employee testified that PETCO received the summons and complaint and delivered the documents to the attorney. TMT, 140 Wn. App. at 197 n.2. Further, before entry of the default judgment, TMT called PETCO to notify it "that the company was in danger of default." TMT, 140 Wn. App. at 197 n.2. On appeal, we concluded the court did not abuse its discretion in concluding that PETCO did not establish excusable neglect. TMT, 140 Wn. App. at 212-13.

Here, unlike in TMT and Little, the complaint named BLI and not BLSI, there is no dispute that BLSI did not receive notice of the lawsuit, and the evidence does not show that the instruction to CSC was inappropriate.[6]

---

[6] The other cases Grantor cites are also distinguishable. In In re the Estate of Stevens, 94 Wn. App. 20, 32, 35, 971 P.2d 58 (1999), and Commercial Courier Service, Inc. v. Miller, 13 Wn. App. 98, 105-06, 533 P.2d 852 (1975), there was no question that the defendants had notice but simply ignored service of process and chose not to appear. See also Johnson v. Cash Store, 116 Wn. App. 833, 848-49, 68 P.3d 1099 (2003) (where defendant established only a prima facie defense and did not explain properly-served store manager's failure to forward complaint, court did not abuse discretion by denying motion to vacate default judgment); Beckman v. Dep't of Social & Health Servs., 102 Wn. App. 687, 696, 11 P.3d 313 (2000) (addressing a late filing of a notice of appeal, not a motion to vacate a default judgment).

Grantor also challenges the finding that "[m]istakes were made by all parties from the commencement of the claim through the entry of the order of default and default judgment." Substantial evidence supports the finding. While the assistant manager at the Burien Big Lots store gave Grantor a business card with the name and address of BLI, the record shows that before filing the ex parte motion for an order of default against BLI, Grantor's attorney knew that BLSI was the correct defendant. And by June 2011, Grantor knew that PNS Stores was the correct defendant.

It is undisputed that the two secondary factors favor vacating the default. The court's unchallenged finding of fact states that "Big Lots Stores, Inc. was diligent in moving to vacate the orders of default and default judgment promptly after learning about the entry of default judgment." There is no substantial hardship to Grantor. The prospect of trial does not constitute substantial hardship, and the court awarded Grantor the attorney fees incurred in responding to the motion to vacate the default judgments. Pfaff, 103 Wn. App. at 836; Berger v. Dishman Dodge, Inc., 50 Wn. App. 309, 313, 748 P.2d 241 (1987) (where the court orders the defendant to pay the plaintiff's attorneys fees incurred in obtaining the default judgment, there is no hardship).

We conclude the trial court did not abuse its discretion by granting the motion to vacate the order of default and the default judgments.

Cross Appeal

BLSI appeals amendment of the case caption to name BLSI and PNS Stores and the award of attorney fees.

BLSI argues the court erred by amending the caption because PNS Stores was not properly served and because BLSI did not own or operate the Burien store. The

attorney for PNS Stores and BLSI repeatedly asserted that PNS Stores was the operator of the Burien store and stipulated to amend the caption to name PNS Stores. While BSLI may not be properly named as a defendant, BSLI did not object below. We do not consider arguments made for the first time on appeal. RAP 2.5(a); <u>Lunsford v. Saberhagen Holdings, Inc.</u>, 139 Wn. App. 334, 338, 160 P.3d 1089 (2007).[7]

BLSI also waived the right to challenge the award of attorney fees. BLSI concedes that it did not object below. Further, while the court expressly told the parties that "if somebody wants to present additional paperwork, if I have grossly exceeded a figure that you think is reasonable[,] you can provide the paperwork to me," BLSI did not do so.

Because the court did not abuse its discretion by granting the motion to vacate the order of default and default judgments, we affirm.

WE CONCUR:

---

[7] BLSI is not precluded from filing a motion to amend the caption.

19